Case 4:21-cv-01126   Document 40   Filed on 11/30/21 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1126 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This case presents a number of questions. The first question the parties ask the court to address is whether, under their agreement, the defendant owed a fiduciary duty to the plaintiff. The agreement the parties entered is known as a rabbi trust because the first such agreement involved a rabbi. The agreement has nothing to do with the rabbinate and is in many ways unlike a conventional trust. A rabbi trust is essentially a bank account set up to hold money set aside for a company's deferred compensation for high level executives, designed to minimize the tax impacts of setting aside the money. The structure used to achieve this tax avoidance uses the word trust, but it is more precisely a bank account in which a company puts money it commits to pay its executive employees and shields that money from certain tax consequences. Calling the account a "trust" and the entity managing the account a "trustee" does not create a fiduciary relationship between the company and the trustee.

Wells Fargo Bank, N.A. was the successor bank holding the money that Occidental Petroleum's predecessor placed in a rabbi trust to achieve the favorable tax treatment. In 2019, Wells Fargo agreed to a request by Occidental to sell certain Occidental shares held in the trust on certain dates. The sales were delayed. Between the dates they should have occurred and the dates

they did occur, COVID-19 hit and the stock market dropped, a lot. Occidental alleges that the trades resulted in far lower payments than if they had been done when promised, and that a payment from Wells Fargo to Occidental in April 2020 was millions of dollars lower than it would have been if Wells Fargo had timely executed the trades. Occidental sued Wells Fargo for the delay in placing the trades and the resulting price and payment drop, asserting claims for breach of fiduciary duty and breach of contract. (Occidental raised, then dropped, a claim for breach of a duty to indemnify.) Wells Fargo has moved to dismiss the breach of fiduciary duty cause of action, and Occidental responded. Wells Fargo also counterclaimed, and Occidental moved to dismiss the counterclaim. The court heard argument on the motions.

Based on the pleadings, the motions and responses; the arguments; and the applicable law, the court grants Wells Fargo's motion to dismiss the fiduciary breach claim. (Docket Entry No. 24). Wells Fargo may owe contractual and other duties that would make it liable for some or all of the losses Occidental seeks, but that liability is not properly based on a breach of fiduciary duty owed by Wells Fargo to Occidental. Wells Fargo's motion to dismiss the indemnity claim, (Docket Entry No. 24), is granted. Occidental's motion to dismiss Wells Fargo's counterclaim, (Docket Entry No. 29), is also granted. The reasons are set out below.

**I.     Background**

Anadarko Petroleum Corporation entered into a Benefits Trust Agreement with Wachovia Bank of North Carolina, N.A., in May 1995, for the benefit of certain Anadarko employees. (Docket Entry No. 24-1 at 6). The Trust was established to guarantee payment to certain high level Anadarko employees under deferred compensation plans or other employee benefit arrangements exempt from ERISA. (Docket Entry No. 24-1 at 6). Each benefit arrangement is considered a "Plan" under the Trust Agreement. (Docket Entry No. 24-1 at 6). The Plan

2

Participants are the current or former highly compensated employees and directors of Anadarko who were participating in a Plan, and the current or former directors, employees, and others who were not participating but who were eligible to receive benefits under a Plan. (Docket Entry No. 24-1 at 9). Beneficiaries are designated under a Plan to receive benefits in the event of the death of a Participant. (Docket Entry No. 24-1 at 8).

Anadarko is now a wholly owned subsidiary of Occidental Petroleum Corporation. (Docket Entry No. 14 at ¶ 6). This change in control converted the shares of Anadarko stock in the Trust to shares of Occidental stock. (Docket Entry No. 14 at ¶ 15). Wells Fargo is the legal successor to Wachovia Bank. (Docket Entry No. 14 at ¶ 6).

Under the Benefits Trust Agreement, the Trust principal and earnings are assets and taxable property of Occidental, not of the employee Participants. The Trust assets are subject to claims by Occidental's general creditors. Occidental alleges that the Trust "employee participants do not have 'any beneficial interest' in the Benefits Trust Agreement." (Docket Entry No. 14 at ¶ 7 (citing Docket Entry 14-1 at 6)). Under Section 4.1 of the Trust Agreement, Occidental "has a right to reversionary distributions from the Trust when the Trust assets exceed 125% of the value of Current Aggregate Accrued Obligations." (Docket Entry No. 14 at ¶ 8). The Trustee's rights and duties include to: "invest and reinvest part or all of the Trust Fund"; "retain in cash such amounts as the Trustee considers advisable"; "manage, sell, insure, and otherwise deal with all real and personal property"; "make payments from the Trust Fund to provide benefits that have become payable under the Plans pursuant to direction from the Company"; "maintain records reflecting all receipts and payments under this Agreement"; "report to the Company as of each calendar year end, and at such other times as the Company may request, the then net worth of the Trust Fund"; and "invest in securities (including stock or rights to acquire stock) or obligations issued by the

Company." (Docket Entry No. 24-1 at 13). The Company may direct the Trustee "to acquire, retain, or dispose of such investments as the Company directs," but the Company's right to direct the Trustee ends following a change in control. (Docket Entry No. 24-1 at 13). After that, "the Trustee's exercise or nonexercise of its powers and discretion in good faith shall be conclusive on all persons." (Docket Entry No. 24-1 at 29).

On December 19, 2019, Wells Fargo agreed to Occidental's request to liquidate shares of Occidental stock from the Trust, "beginning on January 6, 2020, sell 381,420 shares each day over the course of the week, with a final liquidation on January 10, 2020." (Docket Entry No. 14 at ¶ 16). Some of the shares to be liquidated were held at Depository Trust Company, and others were held by Equiniti Trust Company. Wells Fargo argues that this was merely a request from Occidental, not an instruction, although Wells Fargo acknowledges that it agreed to the request. While Wells Fargo acknowledges that it agreed to liquidate the shares on the specified timetable, it also argues that Occidental offered no consideration for Wells Fargo's agreement. (Docket Entry No. 24 at 13).

The parties agree that the shares were not sold on the prescribed dates. They dispute who is to blame. Wells Fargo sold the first tranche of 381,420 shares on January 6, 2020, but sold only 352,080 shares on January 7, instead of the agreed upon 381,420. (Docket Entry No. 14 at ¶ 22–23). Wells Fargo then sold 29,340 shares on both January 13, 2020, and January 14, 2020, far short of the specified number. (Docket Entry No. 14 at ¶ 28). Occidental alleges that Wells Fargo knew on January 31, 2020, that hundreds of thousands of shares held at Equiniti had not been sold. (Docket Entry No. 14 at ¶ 29). Wells Fargo did not sell the remaining 1,114,920 shares until March 20, 2020. (Docket Entry No. 14 at ¶ 30). On the dates that Occidental alleges Wells Fargo had agreed to sell the shares, January 6 through January 10, 2020, the share price ranged from

4

$44.98 to $45.90. (Docket Entry No. 14 at ¶ 28). When Wells Fargo sold the remaining shares on March 20, 2020, the market was in its post-COVID dive, and the share price was $9.98. (Docket Entry No. 14 at 9).

Under Section 4.1 of the Trust Agreement, if the value of the Trust exceeds 125% of "Current Aggregate Accrued Obligations under the Plans," Occidental was permitted to request a refund of the excess assets "so as to reduce the net assets of the Trust to no less than one hundred twenty-five percent (125%) of the then Current Aggregate Accrued Obligations." (Docket Entry No. 24-1 at 10–11). In April 2021, Wells Fargo transferred $23,696,213.01 to Occidental because the Trust was overfunded. (Docket Entry No. 14 at ¶ 35). Occidental alleges that if Wells Fargo had sold the stock on the dates that Occidental had requested and Wells Fargo had agreed to do, the overfunded amount would have been $30 million greater, and Occidental would have received $30 million more than it did. (Docket Entry No. 14 at 10).

Occidental sued for breach of contract based on the Trust Agreement and Wells Fargo's written commitment to sell the specified stock amounts from January 6, 2020, to January 10, 2020. Occidental also sued for breach of fiduciary duties based on Wells Fargo's status as Trustee and Occidental's status as a party to the Trust Agreement, the owner of the Trust assets, and as an "interested person" and beneficiary under the Texas Property Code. (Docket Entry No. 14 at ¶ 47 (citing Tex. Prop. Code § 115.011)). Occidental also asserted a claim for breach of the indemnity provision of the Trust Agreement. Wells Fargo moved to dismiss Occidental's claims for breach of fiduciary duty and breach of the indemnity provision. Occidental has agreed to dismiss its breach of indemnity claim.

Wells Fargo brought a counterclaim against Occidental based on Equiniti's failure to register a transfer of securities under U.C.C. § 8-401(a). Wells Fargo alleges that it submitted

5

requests to Equiniti, Occidental's transfer agent, to sell specified amounts of Occidental shares no later than January 9, 2020, but that Equiniti "refused to register the transfer [of] the Occidental shares owned by the Trust as and when Wells Fargo requested." (Docket Entry No. 27 at ¶ 65, 67). Wells Fargo alleges that Occidental was aware of Equiniti's unreasonable refusal to register the transfer and did not address it, and that because Equiniti is Occidental's agent, Occidental is responsible for Equiniti's failure to register the transfer. (Docket Entry No. 27 at ¶ 85, 90–92).

Occidental responds that Wells Fargo's delay in the sale of stock was the result of Wells Fargo's own unexplained delays, and that Wells Fargo cannot state a claim under U.C.C. § 8-401 because there was no transfer of the Occidental stock or presentment of a request to transfer.

The court held oral argument on the motions. Counsel for both sides have thoroughly and ably analyzed the facts and the law. The court analyzes the motion to dismiss the breach of fiduciary duty and the motion to dismiss the counterclaim below.

## II.     The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

6

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III. Analysis

#### A. Occidental's Claim for Breach of Fiduciary Duties

"[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker,* 514 S.W.3d 214, 220 (Tex. 2017). Occidental alleges that as the primary

7

beneficiary of the Trust, a party to the Trust Agreement, the owner of the Trust assets, and an interested person under the Texas Property Code § 111.004(7), Wells Fargo owed fiduciary duties that it breached when it failed to comply with its written agreement to sell shares from the Trust in a specified number on a specified timetable.  Wells Fargo moves to dismiss on the ground that under the facts alleged and the documents properly considered, (1) Occidental is not a beneficiary of the Trust, (2) even if Wells Fargo owed some duty to Occidental as an interested person, Occidental does not have standing to bring the claim, and (3) Texas law does not establish a fiduciary duty based on Occidental's status as an interested person.

A fiduciary duty generally exists between a trustee and a beneficiary.  *Healey v. Healey*, 529 S.W.3d 124, 135 (Tex. App.—Tyler 2017, pet. denied).  Wells Fargo argues that the Trust Agreement does not include Occidental in its definition of "Participant" or "Beneficiary."  Wells Fargo has the better argument.  These are defined terms.  "Participant" is defined as a person who is entitled to benefits under the Plan, including current and former members of the board of directors and current and former employees who are participating or are eligible to participate. (Docket Entry No. 24-1 at 9).  "Beneficiary" is defined as "the person or entity designated under a Plan to receive benefits in the event of the death of the Participant."  (Docket Entry No. 24-1 at 8).  The "Company," defined in the Trust Agreement as Anadarko Petroleum Corporation and its successors, is not listed as, or included in the definitions of, a Participant or a Beneficiary in the Plan. (Docket Entry No. 24-1 at 7–8).  The definitions in the Trust Agreement do not support finding that Occidental is a beneficiary of the Trust.

Occidental relies on a more functional approach.  Occidental argues that because the Trust Agreement provided that Anadarko "retained all equitable ownership of the Trust assets," as Anadarko's successor, it is in effect the primary beneficiary of the Trust. (Docket Entry No. 30 at

8

17). The principal of the Trust and any earnings on the principal are assets of Occidental and are subject to creditors of Occidental. (Docket Entry No. 14 at ¶ 7). Occidental alleges that it has a right to receives periodic "non-discretionary" payments from the Trust assets and has a vested reversionary interest in the Trust. (Docket Entry No. 30 at 18). Occidental relies on a provision in the Trust Agreement that permits it to make benefit payments directly to Plan Participants, and then seek reimbursement for these benefit payments from the Trust. (Docket Entry No. 30-1 at 10).

The Trust Agreement does not, however, support Occidental's argument that it is a beneficiary because it is entitled to receive payments from the Trust. The Trust Agreement puts the decision to refund excess assets within the "sole determination" of the Trustee. (Docket Entry No. 24-1 at 10–11). The Trust is irrevocable and is "held for the exclusive purpose of providing benefits under a Plan to Participants." (Docket Entry No. 24-1 at 7). "No part of the income or corpus of the Trust Fund shall be recoverable by the Company, except as provided in Section 4.1." (Docket Entry No. 24-1 at 7). Section 4.1 provides that before a change in control, the Company may direct the Trustee to return assets exceeding 100 percent of the Current Aggregate Accrued Obligations at the end of any calendar year. (Docket Entry No. 24-1 at 10). After a change in control, if assets in the Trust exceed 125 percent of the Current Aggregate Accrued Obligations, the Company may request that the Trustee pay the Company the excess amount, but the decision to pay is in the Trustee's "sole determination." (Docket Entry No. 24-1 at 10–11). Occidental's amended complaint concedes that "Anadarko Petroleum underwent a change of control when it was acquired by Occidental in August of 2019." (Docket Entry No. 14 at ¶ 15). After the change in control, whether to pay Occidental any amount over 125 percent of the Current Aggregate Accrued Obligations in a year was up to Wells Fargo.

The Trust Agreement states that other than as provided in Section 4.1, "the Company shall have no right or power to direct the Trustee to return to the Company or to divert to others any of the assets in the Trust before payment of all benefits have been made to Participants pursuant to the terms of the Plans." (Docket Entry No. 24-1 at 11). Occidental is not a beneficiary of the Trust based on its right to seek reimbursement, because the Trust Agreement places reimbursement after a change in control in the sole discretion of the Trustee and does not give Occidental a right to payment. Nor is Occidental a Trust beneficiary based on its right to receive reimbursements for benefits it pays directly to employees. Occidental serves only as a conduit for these payments and is not a beneficiary of them.

Wells Fargo additionally argues that if Occidental is a Trust beneficiary, the Trust "is by definition not a rabbi trust" and would not qualify for the favorable tax treatment it receives. (Docket Entry No. 31 at 7). "[A rabbi trust is] an irrevocable trust for deferred compensation. Funds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." *In re IT Grp., Inc.*, 448 F.3d 661, 665 (3d Cir. 2006), as amended (July 10, 2006). The employer is considered the owner of the trust, and income the trust generates is taxable to the employer. *McAllister v. Resol. Tr. Corp.*, 201 F.3d 570, 573 (5th Cir. 2000). This allows "the participants to defer tax liability on their individual shares until asset distribution under the terms of the plan." *Id.*

Occidental agrees that the Trust Agreement was drafted as a rabbi trust. The Trust Agreement states that the Trust is "for the exclusive purpose of providing benefits under a Plan to Participants," but that Plan Participants have "no preferred claim on, or any beneficial interest in," the Trust. (Docket Entry No. 24-1 at 7). Occidental's lack of power to direct refunds is consistent with the requirement of a rabbi trust that "[f]unds held by the trust are out of reach of the

employer." *In re IT Grp., Inc.*, 448 F.3d at 665. The facts that the Trust was drafted to be, and is, a rabbi trust, further support finding that Occidental is not a beneficiary of the Trust. Wells Fargo did not owe a fiduciary duty to Occidental as a beneficiary.

Occidental's second asserted basis that Wells Fargo owes it a fiduciary duty is that Occidental is an "interested person" under the Texas Trust Code. The parties have not cited, and the court has not found, authority under Texas law that directly addresses whether an entity with Occidental's relationship to the Trust is an "interested person"; if so, whether under the Texas Trust Code, Occidental may bring an action as an "interested person" related to the Trust; and, if so, whether the Trustee of that Trust owes Occidental, as an "interested person," a fiduciary duty.

An "interested person" is:

> a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding.

Tex. Prop. Code § 111.004(7). An "interest" is "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." Tex. Prop. Code § 111.004(6). A "beneficiary" is a person for whose benefit property is held in trust, regardless of the nature of the interest. Tex. Prop. Code § 111.004(2). An "interested person" includes beneficiaries but extends to a broader category of persons or entities with an interest in property. Occidental argues that it qualifies as an interested person because it is the owner and a beneficiary of the Trust assets.

Texas courts have recognized that an interested person may have standing to bring suit against a trustee for breach of a fiduciary duty, but interested person status alone is insufficient to give rise to a fiduciary duty. In *Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), the Texas Court of Appeals recognized that generally, "a contingent

11

beneficiary would appear to meet the definition of an interested person with standing to bring suit against a trustee for breach of fiduciary duty." *Id.* at 803. But the court concluded that on the facts of that case, the contingent beneficiary did not have standing to bring the claims. *Moon* involved a contingent beneficiary's claim against a settlor who was also the cotrustee of a revocable trust. *Id.* The settlor had the power to revoke or amend the trust until his death, and he was the sole beneficiary of the trust while he was alive. *Id.* The court concluded that the contingent beneficiary did not have standing to bring a breach of fiduciary duty claim based on the settlor's disposition of assets while the settlor was alive. *Id.* at 806. *Moon* supports the argument that an interested person with merely a contingent claim does not have standing to bring a breach of fiduciary duty claim.

Wells Fargo argues that even if Occidental qualifies as an interested person, interested persons do not have standing to bring tort claims against trustees. An interested person is permitted to bring an action for "proceedings concerning trusts," in Texas district court, over which Texas district courts have original and exclusive jurisdiction. Tex. Prop. Code §§ 115.001, 115.011. A "proceeding concerning trusts" involves only certain administrative matters, not tort claims against a trustee. Tex. Prop. Code § 115.001. *See In re J.P. Morgan Chase Bank, N.A.*, 361 S.W.3d 703, 707 (Tex. App.—Corpus Christi 2011, no pet.) ("[N]othing in the amendment indicates the intent to overrule those cases holding that section 115.001 does not encompass tort claims and non-administrative matters against a trustee."); *In re NationsBank, N.A.*, No. 01-98-00582-CV, 1999 WL 213100, at *4 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("[W]e conclude that there was no intent to broaden "proceedings concerning trusts" under section 115.001(a) to include proceedings sounding in tort against the trustee."). Occidental's breach of fiduciary claim is not brought under § 115.001. The question is not Occidental's right to bring a claim against Wells

12

Fargo relating to the administration of the Trust in Texas state district court. The question is whether Wells Fargo as Trustee owed Occidental a fiduciary duty as an interested person in the Trust.

Occidental has not cited, and the court has not found, authority that supports extrapolating from Occidental's interested person status a right to demand fiduciary duties from Wells Fargo. "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). "[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (citation omitted). It is not clear that Occidental "subjectively" trusted Wells Fargo. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Both are highly sophisticated entities. Their duties and rights were spelled out in the Trust Agreement, apparently negotiated at arms-length. Occidental paid Wells Fargo to provide the services specified as Trustee. The fiduciary breach claim does not arise from Wells Fargo's general duties as Trustee, but from its agreement to carry out a request by Occidental to sell certain shares from the Trust on certain dates. Even if Occidental and Wells Fargo trusted each other, and Occidental trusted Wells Fargo to carry out the transactions that gave rise to this suit as requested, the fact that parties to a transaction subjectively trust each other does not establish a fiduciary relationship. *See Schlumberger*, 959 S.W.2d at 177. To impose a fiduciary relationship "in a business transaction, 'there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit.'" *Id.* (citation omitted). Because the Trust itself does not create a fiduciary duty owed by Wells Fargo to Occidental, Wells Fargo's additional agreement to sell the Occidental shares in January and March 2020, is insufficient to create a fiduciary duty.

13

The structure and purpose of the Trust, as a rabbi trust, are for the future benefit of certain high-level Occidental employees. The fact that these employees are the sole beneficiaries is an additional basis to distinguish the Texas Court of Appeals cases involving vested remainder interests. *Cf. Snyder v. Cowell*, No. 08-01-00444-CV, 2003 WL 1849145, at *6 (Tex. App.—El Paso 2003, no pet.) ("Vested remaindermen are 'interested persons' under the Trust Code and can bring a cause of action for breach of fiduciary duty."). The Trust was not created to protect a present or future right of Occidental to receive reversionary funds. As Wells Fargo argues, Occidental's interest is more speculative. Wells Fargo relies on *Davis v. Davis*, 734 S.W.2d 707 (Tex. App.—Houston[1st Dist.] 1987, writ refused n.r.e.), in which the court explained that under Texas law, "[o]ne cannot maintain a suit for the enforcement or adjudication of a right in property that he expects to inherit, because he has no present right or interest in the property." *Id.* at 709–10. In *Davis*, the father's interest in the trust was based on a contingent right to inherit the assets if one of his children died intestate, making him a "potential beneficiary" with a "possibility of inheritance." *Id.* at 709. Occidental's future interest is similarly speculative because although the Trust is irrevocable, Occidental will receive Trust assets only if there are remaining assets after all benefits and expenses have been paid out from the Trust. There is no guarantee that Occidental will receive any payout from the Trust. The nature of Occidental's interest in the Trust does not appear to meet the requirements for a fiduciary duty owed by Wells Fargo to Occidental.

Wells Fargo additionally argues that that the economic-loss rule precludes recovery in tort for what is actually a contract claim. The economic-loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). But "even if the matter in dispute is the subject of a contract, a party may elect a recovery in tort if the duty breached stands

independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 909 (Tex. App.—San Antonio 2019, no pet.) (citation omitted). To decide whether the economic-loss rule applies, courts "look to the source of the alleged duty and the nature of the claimed injury." *Id.*

Occidental argues that Wells Fargo's duties arise independently from the Trust Agreement, and instead arise from the Texas Trust Code and Texas common law. But Occidental has not alleged a relationship with Wells Fargo beyond its interest in the Trust. Nor has Occidental alleged an injury separate from its breach of contract claim. Occidental argues that it is entitled to pursue alternative theories of relief, and that the economic-loss doctrine is one theory of damage calculation, not liability. The court agrees that it is premature to resolve this argument at the motion to dismiss stage. Occidental is entitled to plead alternative theories for relief, and will face the economic-loss rule if and when it recovers, depending on the basis of recovery. *Hybrid Energy Servs., Ltd. v. Magness Oilfield Brokerage, LLC*, No. 5:16-CV-090-C, 2016 WL 11673473, at *3 (N.D. Tex. Aug. 5, 2016). *See also Sunday Riley Mod. Skin Care, L.L.C. v. Maesa*, No. CIV.A. H-12-1650, 2014 WL 722870, at *5 (S.D. Tex. Feb. 20, 2014) ("The economic loss rule does not prevent parties from pleading multiple theories of liability; it bars them from recovering economic losses caused by a breach of contract on a negligence theory."); Fed. R. Civ. P. 8(d)(3) ("A party may assert as many separate claims as it has, regardless of consistency.").

The motion to dismiss the claim for breach of fiduciary duty is granted. Because amendment would be futile, the dismissal of the claim is with prejudice. The motion to dismiss on the basis of the economic-loss rule is denied.

B.     **Occidental's Claim for Breach of the Indemnity Provision**

The Trust states that "[t]he Trustee hereby agrees to indemnify and hold harmless the Company from and against losses, damages, liabilities, claims, costs or expenses (including reasonable attorney's fee) which the Company may reasonably incur by reason of the negligence or willful misconduct of the Trustee." (Docket Entry No. 24-1 at 29). Wells Fargo argues that this clause does not apply to the claims between the parties to the Trust Agreement. Occidental did not address the indemnity provision in its response and conceded at oral argument that it does not intend to pursue the indemnity claim. Occidental's claim for breach of the indemnity agreement is dismissed, with prejudice, because amendment would be futile.

C.     **Wells Fargo's Counterclaim under U.C.C. § 8-401**

Wells Fargo brings a counterclaim against Occidental under U.C.C. § 8-401 based on Equiniti's alleged failure to register the transfer of Occidental shares. Wells Fargo argues that it "submitted requests to Equiniti to sell Occidental shares no later than January 9, 2020." (Docket Entry No. 27 at 20). Wells Fargo does not cite to the parallel provisions under Texas or Delaware law, but both states have adopted U.C.C. § 8-401. *See* Tex. Bus. & Com. Code § 8.401; Del. Code Ann. tit. 6, § 8-401.

"To state a claim under Section 8-401, the plaintiff must plausibly allege that the shares were presented to the issuer and that the seven additional conditions outlined in the statute are met." *POSCO Energy Co. v. FuelCell Energy, Inc.*, No. 1:20-CV-7509-MKV, 2021 WL 4224956, at *6 (S.D.N.Y. Sept. 16, 2021) (interpreting the parallel provision under Delaware law). Occidental argues that Wells Fargo has failed to satisfy the pleading requirements because it relies only on the conclusory allegation that the "request to transfer the Occidental shares owned by the Trust met all of the requirements set forth in UCC § 8-401." (Docket Entry No. 35 at 6 (citing

16

Docket Entry No. 27 at 18). Wells Fargo cannot state a claim, Occidental argues, because Wells Fargo's allegations are based exclusively on Equiniti's failure to sell Occidental shares, and § 8-401 applies only to the duty to register a stock after it had been transferred.

Wells Fargo relies on a series of cases for its argument that § 8-401 requires issuers to transfer securities, not just to perform the ministerial act of registering them. The cases Wells Fargo cites are distinguishable because they do not involve a party who failed to initiate any transfer, as is the case here. *See, e.g.*, *Kanton v. U.S. Plastics, Inc.*, 248 F. Supp. 353, 361 (D.N.J. 1965) (the court directed a corporation to register a transfer after the corporation failed to do so because of an alleged adverse claim to that stock).

Additionally, Wells Fargo has not alleged that it presented the securities in registered form to Occidental's agent. "The issuer has a duty to register a transfer of shares that are presented to the issuer in registered form together with a request to register the transfer." *Jing Jing v. Weyland Tech, Inc.*, No. CV 17-446, 2017 WL 2618753, at *3 (D. Del. June 15, 2017) (citing Del. Code Ann. tit. 6, § 8-401). "Perhaps the most obvious requirement that must be satisfied before the issuer's duty to register a transfer arises, is that the certificate be presented." *Id.* (citation omitted). When a plaintiff "has not presented the security in registered form to [the issuer], there is no duty on the issuer to register a transfer." *Id.* (citing *First Nat'l Bank in Dali. v. Dyes*, 638 S.W.2d 957, 958 (Tex. App. 1982)).

Wells Fargo argues that this is not a pleading issue subject to challenge under Rule 12(b)(6). Wells Fargo argues that because the transactions did not involve physical certificates, all Wells Fargo needed to do was make a request for a transfer, rather than present anything. Wells Fargo does not provide support for this lower standard, but even if it did, it has not alleged that it requested registration, so the pleading still falls short. Wells Fargo argues that it satisfied the

registration request by submitting "a stock transfer request to Equiniti in the form of medallion-stamped directions to sell on January 8 and 9, 2020." (Docket Entry No. 34 at 14). But this still does not address the clear requirement of § 8-401 to present a qualifying instruction to register the stock. Because Wells Fargo failed to present a qualifying instruction to register the stock, it has still failed to meet the requirements.

At oral argument, the parties disputed whether *Campbell v. Liberty Transfer Co.,* No. CV-02-3084, 2006 WL 3751529, at *1 (E.D.N.Y. Dec. 19, 2006), supports Wells Fargo's standing to assert this counterclaim as a nontransferee. In *Campbell*, the court explained, "§ 8-401 obligates an issuer, or its transfer agent, to take the necessary steps to record a sale of its stock when the seven preconditions in the statute have been satisfied. The failure to perform that duty may cause harm to a transferee or a transferor and either, depending on the circumstances, may seek damages for a statutory violation." *Id.* at 10. But the issue here is that the prerequisite transfer was never made, so regardless of its status as transferor, transferee, or prospective transferor, Wells Fargo cannot argue that it has been harmed by a failure to register a transfer that had not occurred.

Wells Fargo has failed to state a claim under § 8-401. The motion to dismiss the counterclaim is granted, with prejudice, because amendment would be futile.

## IV. Conclusion

Wells Fargo's motion to dismiss the breach of fiduciary duty and indemnity claims, (Docket Entry No. 24), is granted. Occidental's motion to dismiss the counterclaim, (Docket Entry No. 29), is also granted. The parties have made clear that much work remains to be done before

this case can be framed for ultimate resolution. The next step is to define the most reliable, careful, and efficient way to get to that point.

SIGNED on November 30, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge