Case 4:21-cv-01126   Document 90   Filed on 06/21/22 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
June 21, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1126 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case involves a delay in the sale of stock in late 2019 and early 2020. The stock price had dropped between the dates the shares should have been sold and the dates they were sold. Occidental Petroleum alleges that Wells Fargo, which placed the trades on Occidental's behalf, should pay the difference.

Wells Fargo is the successor bank holding the money that Occidental's predecessor placed in a rabbi trust. A rabbi trust is a bank account that holds money set aside for a company to pay high level executives deferred compensation to achieve favorable tax treatment. Occidental sued Wells Fargo for the delay in placing the trades and the resulting price and payment drop, asserting claims for breach of fiduciary duty, breach of contract, and breach of a duty to indemnify. Wells Fargo counterclaimed. The court issued a memorandum opinion and order addressing those claims. (Docket Entry No. 40). The remaining claims between Occidental and Wells Fargo are not yet ripe for resolution.[1]

---

[1] The only remaining claim between Occidental and Wells Fargo was Occidental's claim for breach of contract, but Occidental has sought leave to file a third amended complaint. (Docket Entry No. 74). Wells Fargo added a counterclaim against Occidental for Equiniti's negligence under a vicarious liability theory. (Docket Entry No. 65). Occidental and Wells Fargo filed cross motions for summary judgment, which are not yet ripe. (Docket Entry Nos. 80, 81).

Wells Fargo filed a third-party complaint against Equiniti Trust Company, Occidental's transfer agent. (Docket Entry No. 25). Equiniti moved to dismiss for lack of personal jurisdiction. (Docket Entry No. 47). Wells Fargo amended the third-party complaint, and Equiniti moved to dismiss the amended third-party complaint. (Docket Entry Nos. 55, 64).

Based on the pleadings, the motions and responses; the arguments; and the applicable law, the court grants Equiniti's motion to dismiss Wells Fargo's amended third-party complaint for lack of personal jurisdiction. (Docket Entry No. 64). The reasons are set out below.

## I. Background[2]

Anadarko Petroleum Corporation entered into a Benefits Trust Agreement with Wachovia Bank of North Carolina, N.A., in May 1995, for the benefit of certain highly compensated Anadarko employees. (Docket Entry No. 55 at 3). Anadarko was headquartered in Houston, Texas, and the Trust was created and governed under Texas law. (Docket Entry No. 55 at 3). The Trust was established to guarantee payment to these high-level Anadarko employees under deferred compensation plans or other employee benefit arrangements exempt from ERISA. (Docket Entry No. 55 at 4).

Anadarko is now a wholly owned subsidiary of Occidental Petroleum Corporation. (Docket Entry No. 55 at 4). This change in control converted the Anadarko stock in the Trust to Occidental stock. (Docket Entry No. 14 at ¶ 15). Wells Fargo, which is organized as a national

---

[2] The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts," if it decides a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

bank under the laws of the United States, is the legal successor to Wachovia Bank and has its principal place of business in South Dakota. (Docket Entry No. 55 at 1, 4).

In December 2015, Occidental retained Wells Fargo as its transfer agent under a Transfer Agent Services Agreement. (Docket Entry No. 55 at 4; Docket Entry No. 55-2). A transfer agent acts as "a liaison between a company's registrar and investors, and perform[s] tasks such as maintaining investors' financial records and account balances, recording transactions, cancelling and issuing certificates, transferring securities, and executing securities transactions for holders of a client company's stock." (Docket Entry No. 55 at 18).

Wells Fargo sold its transfer agent line of business to Equiniti Group, plc, in July 2017. (Docket Entry No. 55 at 5). Equiniti took over Equiniti Group, plc's obligations to Wells Fargo in February 2018. (Docket Entry No. 55 at 6). Equiniti is a limited trust company organized under the laws of New York, with its principal place of business in New York. (Docket Entry No. 55 at 2). Equiniti is registered and qualified to do business in Texas. (Docket Entry No. 55 at 2). As part of Equiniti's purchase of the transfer agent business, Equiniti agreed to assume Wells Fargo's obligations to Occidental. (Docket Entry No. 55 at 5). Occidental could have terminated the relationship with Equiniti but did not do so. (Docket Entry No. 55 at 6).

The Trust held 1,907,100 shares of Occidental common stock after Occidental and Anadarko merged. (Docket Entry No. 55 at 6). Wells Fargo alleges that it told Occidental in December 2019 that it intended to sell the Occidental stock and reinvest in other financial instruments. (Docket Entry No. 55 at 6). Occidental allegedly recommended that Wells Fargo wait until January 2020 to sell the shares, and to do the sales in five tranches of 381,420 shares each. (Docket Entry No. 55 at 6).

Wells Fargo explains that securities exist in three different forms:

3

>   (a) Physical Certificate: The security is registered in the shareholder's name on the issuer's books, and the shareholder receives a hard copy stock certificate representing the shareholder's ownership of the security.
>
>   (b) "Street Name" Registration: The security is registered in the name of a brokerage firm on the issuer's books, and the brokerage firm holds the security for the shareholder in book-entry form (meaning there is no physical certificate, but only an entry on the books denoting ownership).
>
>   (c) "Direct" Registration: The security is registered in the shareholder's name on the issuer's books, and either the issuer or its transfer agent holds the security for the shareholder in book-entry form.

(Docket Entry No. 55). Wells Fargo alleges that it held some of the Occidental shares in "street name" and others in "direct registration." (Docket Entry No. 55 at 7). Wells Fargo alleges that to execute a trade of the shares held in direct registration, Equiniti, as the transfer agent, needed to transfer the shares to a broker-dealer so the shares could be registered in street name and sold in the open market. (Docket Entry No. 55 at 8).[3]

Wells Fargo alleges that the sale of the Occidental shares should have proceeded by Wells Fargo asking Equiniti to sell the shares held in direct registration under Wells Fargo's name on Occidental's books. Equiniti should have sent a statement of the shares to Wells Fargo and a request to its brokerage firm to begin the transfer. Equiniti's broker should have then sent a deposit request to Equiniti, which in turn should have sent a deposit confirmation to its broker and

---

[3] The process of selling direct registration shares starts with the shareholder telling the transfer agent that it wants to sell the shares. (Docket Entry No. 55 at 8). The transfer agent then contacts a brokerage firm to begin transferring the registration on the books of company from the name of the shareholder into the street name. (Docket Entry No. 55 at 8). The street name is "'the nominee name' used by the central clearinghouse to allow the shares to be deposited with the clearinghouse and held in a brokerage account." (Docket Entry No. 55 at 8). The brokerage firm requests that the transfer agent deposit the direct registration shares with the central clearinghouse. (Docket Entry No. 55 at 8). The transfer agent transfers the shares from the name of the shareholder to the street name. (Docket Entry No. 55 at 8). The broker then sells the shares on the open market and forwards the proceeds to the transfer agent. (Docket Entry No. 55 at 8). The transaction concludes when the transfer agent sends the sale proceeds back to the original shareholder. (Docket Entry No. 55 at 9).

simultaneously changed the registration on the Occidental books from Wells Fargo to the nominee name, Cede & Co. Equiniti's broker would then sell the shares out of Equiniti's brokerage account and send the sales proceeds to Equiniti, which would disburse the proceeds to the Trust. (Docket Entry No. 55 at 9–10).

Wells Fargo alleges that because the first tranche of shares was held in street name, Equiniti's involvement was not required for the sale. (Docket Entry No. 55 at 10). The first tranche was sold as planned on January 6, 2020. (Docket Entry No. 55 at 10). Of the second tranche, 352,080 shares were in street name and were sold by Wells Fargo on January 7, 2020. (Docket Entry No. 55 at 10). Wells Fargo could not sell the remaining 29,340 shares directly into the market because they were held in direct registration. (Docket Entry No. 55 at 10). Equiniti was required to transfer the direct registration shares on the Occidental books to the street name and to the broker-dealer so they could be sold in the open market. (Docket Entry No. 55 at 10).

On January 7, 2020, a Wells Fargo representative called an Equiniti representative to confirm the transfer process for the direct registration shares. (Docket Entry No. 55 at 11). Equiniti instructed Wells Fargo to complete a direct registration Transaction Request and send it back to Equiniti. (Docket Entry No. 55 at 11). Wells Fargo submitted the Transaction Request to Equiniti on the same day, "instructing Equiniti to sell the remaining 29,340 shares in what Wells Fargo had planned to be the balance of the second tranche." (Docket Entry No. 55 at 11). Wells Fargo alleges that Equiniti first confirmed the Transaction Request on January 7, 2020, but on January 8, 2020, Wells Fargo learned that Equiniti had rejected the Transaction Request. (Docket Entry No. 55 at 11). Wells Fargo resubmitted the Transaction Request on January 8, 2020, and on January 9, 2020, Wells Fargo sent another Transaction Request to Equiniti to sell the remaining three tranches of Occidental stock. (Docket Entry No. 55 at 11). Wells Fargo alleges that it used

the Transaction Request forms Equiniti provided and filled each of them out the same way. (Docket Entry No. 55 at 12). Wells Fargo alleges that Equiniti transferred the remaining 29,340 shares of the second tranche on January 13, 2020, to street name shares, and then sold the shares. (Docket Entry No. 55 at 11). That same day, Equiniti informed Wells Fargo that it could expect to receive the proceeds of the sale of the Occidental stock from the Trust by January 27, 2020. (Docket Entry No. 55 at 12).

On January 14, 2020, Equiniti sold an additional 29,340 shares, which had been direct registered in Wells Fargo's name. Wells Fargo alleges that this sale was unauthorized and in error because Equiniti had already sold the remaining 29,340 shares from the second tranche. (Docket Entry No. 55 at 12). On January 31, 2020, Wells Fargo told Occidental that Equiniti had not completed the requested transfers and sales and that Wells Fargo was having difficulty communicating with Equiniti. (Docket Entry No. 55 at 13). Occidental did not respond. (Docket Entry No. 55 at 13).

Wells Fargo alleges that between January 31, 2020, and February 14, 2020, Wells Fargo monitored the status of the sales and attempted to obtain information from Equiniti. (Docket Entry No. 55 at 13). On February 14, 2020, Wells Fargo learned that Equiniti had failed to complete the sales in January. (Docket Entry No. 55 at 13). Wells Fargo learned that Equiniti had sent a written request by U.S. mail to Wells Fargo in January 2020, asking Wells Fargo to confirm the number of shares to be sold. (Docket Entry No. 55 at 13). Wells Fargo alleges that this information was "unambiguously" written on the Transaction Requests, that Equiniti knew this request would not arrive at Wells Fargo in less than 10 days, and that Equiniti did not use any other means—such as by phone, fax, email, or overnight carrier—to notify Wells Fargo that it had not sold the remaining

6

stock. (Docket Entry No. 55 at 13). Wells Fargo finally received the written request to confirm the number of shares on February 16, 2020. (Docket Entry No. 55 at 14).

Wells Fargo alleges that it immediately started filling out new Transaction Requests, but it needed a new account statement from Equiniti. (Docket Entry No. 55 at 13–14). Wells Fargo requested the account statement on February 19, 2020, and Wells Fargo agreed to pay for overnight delivery of the requested statement. (Docket Entry No. 55 at 14). On February 20, 2020, Equiniti informed Wells Fargo that it had pulled an incorrect statement and the mailing would be delayed. (Docket Entry No. 55 at 14). Equiniti sent the requested statement on February 24, 2020, and Wells Fargo received it on February 26, 2020, with obvious errors. (Docket Entry No. 55 at 14).

As a result of the difficulties with Equiniti, Wells Fargo transferred the remaining stock to the Depository Trust Company. All remaining stock was transferred to the Depository Trust Company on March 18, 2020, and sold on March 20, 2020. (Docket Entry No. 55 at 15). Occidental filed this action against Wells Fargo on April 6, 2021. (Docket Entry No. 55 at 15).

Wells Fargo, in its capacity as Trustee, sued Equiniti, asserting claims for negligence and negligence per se. Wells Fargo sued in its individual capacity for breach of contract, violations of UCC §§ 8-401 and 8-407, and contribution or reimbursement from Equiniti for Wells Fargo's losses and damages from Occidental's claim against Wells Fargo. (Docket Entry No. 55 at 15). Equiniti has moved to dismiss based on lack of personal jurisdiction and failure to state a claim.

## II.     Personal Jurisdiction

### A.     The Personal Jurisdiction Standard under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. "Where, as here, the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that the

7

nonmovant make a *prima facie* showing." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013)). "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020) (quotation omitted); *see also Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (when resolving a motion to dismiss based on personal jurisdiction, the court may consider "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof").

### B. Analysis

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Frank*, 947 F.3d at 336 (citations omitted). The Texas long-arm statute confers jurisdiction to the limits of federal due process. *Id.* Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citation omitted). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to

8

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "A company is [] deemed 'at home' when the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities—which more than likely is the business's domicile." *Frank*, 947 F.3d at 337 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and alterations in original omitted)). "[G]enerally, a corporation's 'home' falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Id.* (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).

Equiniti argues that the court lacks general jurisdiction over it because it is organized under the laws of New York and has its principal place of business in New York. Wells Fargo seems to agree, arguing that it is invoking only "this Court's claim-specific jurisdiction." (Docket Entry No. 69 at 11). The court agrees that Equiniti is not subject to general jurisdiction in this state.

"Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine*, 253 F.3d at 868). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citation and internal quotation marks omitted); *see also Rodeo Time Promotions LLC v. Lawrenceburg Mun. Utilities*, C.A. No. H-20-1740, 2020 WL 7322216, at *2 (S.D. Tex. Dec. 11, 2020).

9

Equiniti argues that there is no relationship between it and Texas related to Wells Fargo's claims. Courts consider three factors when assessing specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "The minimum contacts inquiry is fact intensive and no one element is decisive." *Id.* The "fair and reasonable" inquiry considers "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 760 (citation omitted). "A defendant must have 'fair warning' that his activities may subject him to another state's jurisdiction" and be able to "structure its primary conduct to lessen or avoid exposure to a given State's courts." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021).

Wells Fargo's claims against Equiniti for negligence, breach of contract, and Uniform Commercial Code violations arise out of Equiniti's alleged failed execution of the Transaction Requests that Wells Fargo sent to Equiniti in January 2020. Wells Fargo argues that Equiniti also has an ongoing transfer agent relationship with Occidental under the Transfer Agent Agreement and Occidental was injured as a result of Equiniti's conduct.

Wells Fargo relies on *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), to argue that the court has personal jurisdiction over Equiniti because Equiniti chose to serve the Texas market and its services have injured residents of the forum—the Trust and Occidental. Wells Fargo concedes that Equiniti does not have an office in Texas and that the

wrongful conduct did not occur in Texas. (Docket Entry No. 69 at 13). Wells Fargo argues that Equiniti could have avoided a business relationship with Occidental but it did not, and that Equiniti is registered to do business in Texas. (Docket Entry No. 69 at 13). In *Ford Motor Co.*, the Supreme Court concluded that the forum had specific jurisdiction because "Ford serve[d] a market for a product in the forum State and the product malfunction[ed] there." 141 S. Ct. at 1027. In *Ford Motor Co.*, the Court rejected the argument that for purposes of specific jurisdiction, a plaintiff needs to show a causal link between the injury in the forum and the defendant's contacts with the forum. Ford had "systematically served [the] markets" for the "very vehicles that the plaintiffs alleged malfunctioned and injured them" in those states. *Id.*, at 1028. Although Ford had not sold the specific vehicles that were involved in the crashes at issue in the litigation, the Court concluded that such a causal showing is not necessary. *Id.* at 1029. In doing so, the Court distinguished between the defendants in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980), in which the Court concluded that an Oklahoma court did not have jurisdiction over a New York car dealer who sold a car that later caught fire in Oklahoma. *Ford Motor Co*, 141 S. Ct. at 1027. In contrast, the Court would have had specific jurisdiction over the car's nonresident manufacturer and distributor if their business deliberately extended into Oklahoma, even though the car was not manufactured or sold there. *Id.*

The Fifth Circuit has clarified that "*Ford Motor* does not say . . . that *any* commercial activities in a state support specific jurisdiction over a defendant there. The only relevant activities of the defendant are those that relate to the plaintiff's suit." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 325 (5th Cir. 2021) (quotations omitted). "A state cannot use a defendant's forum contacts—even purposeful ones—to invent jurisdiction over claims that do not relate to or arise from those contacts." *Id.* at 320. And the plaintiff must establish specific jurisdiction for

11

each claim. *McFadin*, 587 F.3d at 759. The court must decide whether Wells Fargo's claims arise from Equiniti's relationship with Texas.

For the breach of contract claim, Wells Fargo alleges that Equiniti breached an implied contract to transfer and sell the shares in five tranches on five different days in January 2020. Wells Fargo alleges that the contract was formed when Equiniti agreed by phone and instructed Wells Fargo to complete the Direct Registration Transaction Request forms that Equiniti had provided. Wells Fargo alleges that it accepted Equiniti's offer by completing the required Transaction Request forms and that Equiniti breached the contract by failing to sell the shares as specified in the Transaction Requests. Wells Fargo is not bringing this claim as a breach of the Transfer Agent Agreement between Occidental and Equiniti. Wells Fargo has not alleged that that the Transfer Agent Agreement between Occidental and Wells Fargo was breached.

When determining whether a court has personal jurisdiction over a breach of contract claim, "only those acts which relate to the formation of the contract and the subsequent breach are relevant," including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Danziger*, 24 F.4th at 500 (quoting *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018)). Importantly, "merely contracting with a resident of the forum state does not establish minimum contacts." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

The Transaction Requests, which Wells Fargo alleges were the basis of its implied contract with Equiniti, show addresses for Wells Fargo in North Carolina and Georgia, and for Equiniti in Minnesota. (Docket Entry No. 64-1 at 2). The requests were signed by a Wells Fargo representative who is based in Georgia, and Equiniti mailed a clarification request to Wells Fargo's North Carolina address. (Docket Entry No. 64-1 at 2–3). Wells Fargo concedes that the wrongful

conduct did not occur in Texas and does not argue that Equiniti communicated with anyone in Texas during the formation or performance of the alleged implied contract. (Docket Entry No. 69 at 13). Wells Fargo is not a Texas resident, and the parties agree that none of the wrongful conduct related to the alleged breach occurred in Texas. Equiniti does not have contacts with Texas through the implied contract with Wells Fargo that relate to Wells Fargo's breach of contract claim.

The Transfer Agent Agreement between Occidental and Equiniti does not change the personal jurisdiction analysis for Wells Fargo's breach of contract claim. The Fifth Circuit has "consistently held that merely contracting with a resident of a forum state does not create minimum contacts sufficient to establish personal jurisdiction over a nonresident defendant." *Blakes v. DynCorp Int'l, L.L.C.*, 732 F. App'x 346, 347 (5th Cir. 2018). "[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* (quoting *Moncrief Oil,* 481 F.3d. at 312). "An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Danziger*, 24 F.4th at 500 (citation omitted).

In *Danziger*, a Texas resident sued an Ohio-based law firm for fraud, unjust enrichment, tortious interference, and breach of contract. *Id.* The nonresident defendant contacted the Texas resident about a possible business venture, the parties exchanged emails and held conference calls about the matter, and the nonresident allegedly breached the contract outside of Texas. *Id.* at 502. The court explained that the defendant's contacts with Texas were not "strategically advantageous to the defendant . . . suggesting that the defendant had purposefully availed itself of doing business in Texas." *Id.* (quoting *Moncrief Oil*, 481 F.3d at 313). The communications related to the

performance of a contract were insufficient to establish jurisdiction. *Id.* The "mere fortuity that one company happens to be a Texas resident . . . is not enough to confer jurisdiction." *Id.* (quoting *Moncrief Oil*, 481 F.3d at 313). The court concluded that personal jurisdiction was lacking because the defendant law firm did not perform, and was not required to perform, any of its obligations in Texas. *Id.*

The Court of Chancery of Delaware recently concluded that minimum contacts did not exist when a transfer agent acted from its New York offices; the contract retaining the transfer services provided for New York law; and the transfer agent did not have property, hold shareholder meetings, or enter into any contract requiring it to perform in Delaware. *Sorenson Impact Found. v. Cont'l Stock Transfer & Tr. Co.*, No. CV 2021-0413-SG, 2022 WL 986322, at *9 (Del. Ch. Apr. 1, 2022). The court explained that the transfer agent's contract with the Delaware corporation was insufficient to confer personal jurisdiction, explaining that "the nature of the contract, being a commonplace commercial contract, embodying New York law, bolsters this conclusion, as the action does not seek to vindicate Delaware-specific law." *Id*.

The same is true with the Transfer Agent Agreement, which is the only alleged contact between Equiniti and Texas. The Agreement did not require performance in Texas and was governed by Delaware law. (Docket Entry No. 55-2 at 5). Wells Fargo does not allege that Equiniti breached the Transfer Agent Agreement between Occidental and Equiniti; the Transfer Agent Agreement is not the basis of Wells Fargo's claims. *Cf. Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 (5th Cir. 2016) (finding no personal jurisdiction when the parties entered into a contract with a Texas choice-of-law clause, but that contract was not the subject of the breach of contract claim between the parties). The Transfer Agent Agreement does not show that Equiniti has purposefully availed itself of the benefits of Texas law.

14

Wells Fargo brings its negligence claims on behalf of the Trust, relying on the Trust Agreement provision that provides that Wells Fargo may, with prior written notice to the Company:

> begin, maintain, or defend any litigation reasonably necessary in connection with the administration of the Trust, and the Company shall indemnify the Trustee against all reasonable expenses and liabilities sustained by the Trustee by reason of such litigation unless resulting from the negligence or intentional misconduct of Trustee.

(Docket Entry No. 55-1 at 14). Wells Fargo brings a claim under the Uniform Commercial Code § 8-401 (codified as Tex. Bus. & Com. Code § 8.401 and Del. Code Ann. tit. 6, § 8-401) and the Uniform Commercial Code § 8-407 against Equiniti, as Occidental's agent. The court dismissed Wells Fargo's counterclaim against Occidental under § 8-401. (Docket Entry No. 40). Both the Uniform Commercial Code claims and the negligence claim arise from the same alleged failure to transfer the securities following Wells Fargo's submission of the Transfer Request to Equiniti in January 2020. Wells Fargo must show that Equiniti's only contact with Texas—contracting with Occidental—relates to these claims, meaning that Equiniti has more than a "fortuitous connection" with the State. *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 317 (5th Cir. 2020).[4]

In *Libersat*, a Louisiana lessor sued a Texas lessee for royalty payments under a Texas mineral lease in Louisiana. *Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 317 (5th Cir. 2020). The Fifth Circuit concluded that minimum contacts were lacking even though the defendants had contracted to assume a lease associated with a Louisiana lessor and had sent other communications

---

[4] Wells Fargo points out that Equiniti registered to do business in Texas, but that did not occur until November 2020, months after the alleged conduct occurred. (Docket Entry No. 71-1 at 1). And Equiniti's registration and qualification to do business in Texas is insufficient on its own to confer jurisdiction. *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 320 (5th Cir. 2020).

and royalty payments about the lease to the lessor in Louisiana. *Id.* at 321–22. The court explained that "[t]he fact that the landowner to whom royalty checks were due happened to reside in Louisiana is, itself, the type of fortuitous connection to the proposed forum that this court has repeatedly held is not sufficient for specific personal jurisdiction." *Id.* at 322.

Wells Fargo has not pointed to evidence that Equiniti "systematically offered services so related to this particular controversy that [it] is subject to jurisdiction in Texas for these claims." *Hughes v. Bank of Am. Corp.*, No. 3:21-CV-00218-N, 2022 WL 179600, at *4 (N.D. Tex. Jan. 19, 2022). "Merely doing business in a particular market is not enough." *Id.* Although Wells Fargo alleges that Occidental suffered the injury as a result of Equiniti's conduct towards Wells Fargo, "mere injury to a forum resident is not a sufficient connection to the forum." *Sangha*, 882 F.3d at 103 (intentional tort context). Equiniti's single Texas contact through its contract with Occidental is insufficient. Equiniti's obligations under the Transfer Agent Agreement did not give rise to Wells Fargo's negligence and Uniform Commercial Code claims because Wells Fargo does not allege that Equiniti breached its obligations under that Agreement.

**III. Conclusion**

Equiniti's motion to dismiss Wells Fargo's counterclaim for lack of personal jurisdiction, (Docket Entry No. 64), is granted. Equiniti's motion to amend the scheduling and docket control order, (Docket Entry No. 78). is denied as moot.

SIGNED on June 21, 2022, at Houston, Texas.

                                                      Lee H. Rosenthal
                                                      Chief United States District Judge